Good afternoon, Illinois public court. First district court is now in session. The 6th division, the Honorable Justice Michael B. Hyman presiding case number 22-1506 people versus Raymond Jones. Good afternoon to both of you. I'm Justice Hyman and with me is Justice Carl Walker and Justice Sanjay Taylor. We will conduct ourselves as if we were in the courtroom. Each side has 20 minutes. Pellon, if you would reserve whatever time you wish for rebuttal, let us know that before we begin. And we'll probably interrupt to ask questions and any other questions that you might have. I think you've gone through this routine before. So how many minutes do you want to reserve? I'd like three minutes for rebuttal, please. Okay, thank you. All right. Just for the record, because of your voice, if each of you would introduce yourselves. Sure. My name is Christopher Gerke. I represent Raymond Jones on behalf of the Office of the State of Health Center. I'm Assistant State's Attorney Erin Slattery on behalf of the people. Thank you. Okay, you may proceed. Thank you. May it please the court. As I said, my name is Christopher Gerke. I represent Raymond in this case. There are three issues raised in this case. But the state concedes that at a minimum, this case already needs to go back for Rule 604D compliance for a new certificate and for at a minimum, a crankle inquiry. The remaining disputed issue here is whether defense counsel was ineffective for not advising Raymond that his guilty plea to violating oral protection required a mandatory four years of home arrest by electronic monitoring, and whether that rendered his plea unknowingly involuntary and whether he should be allowed to withdraw that plea. And the answer to that question is yes. Under Padilla v. Kentucky, the United States Supreme Court, and Peeble v. Hughes in the Illinois Supreme Court, trial attorneys have a duty to advise their clients of certain collateral consequences when they are sufficiently certain to occur, severe, and enmeshed in the criminal process. Hughes said- They may have that duty, but do we have the facts here in order to make that determination? Is that determination, can it be made at this juncture? It can, Your Honor, because we do know, just based on the nature of the offense and just by looking to the law, that electronic monitoring here is a mandatory automatic statutory consequence for a conviction for violating an order of protection. So therefore, just that by itself shows that it's certain to occur and that it's enmeshed in the criminal process. It's also- There was no testimony from the attorney who was sitting there at the hearing as to what transpired with regard to that issue. All we have is from the defendant. That's true, Your Honor, but I think in the context of the record in this case, I think it's more than clear what happened here. My client said on the record that he was shocked when he found out that he had to serve four years of electronic monitoring. He repeatedly said that while he knew he was serving MSR, while he knew that was a consequence, he said, quote, I didn't understand it to be house arrest. He said in court, they did not tell me it would be house arrest. He did not tell me that. I was already on house arrest. They did not tell me- Mr. Gerkey, your argument is really predicated on the notion that the trial counsel didn't pipe up and say, oh, I dispute that or I did tell him. You're saying that based on his silence, that it's clear that he wasn't advised of the consequences of pleading guilty. That's really what you're saying, right? Correct, Your Honor. I'm saying that- Even though the trial court never did what Frankel requires at the first step. I think, Your Honor, based on looking to my client's numerous, again, as Your Honor said, unrebutted statements that counsel didn't advise him of its consequence, and it's corroborated by the record. My client expressly said that he thought he was getting out of house arrest. That was his whole purpose of pleading guilty. The record does show before that he was serving a year of electronic monitoring up until that point. The record further shows that once he pled guilty, he only had a couple of days left on his sentence, which corroborates his assertions that I thought I was getting time served and I wasn't serving house arrest. I'll also point out that in People v. Veatch, the Illinois Supreme Court said that when a record shows the basis for an effectiveness claim, the defendant has to raise it on direct appeal, otherwise it's forfeited. I'm sure that if my client had raised this claim in a post-conviction petition, the state would be arguing that the record is sufficient because he complained so much about this and made it clear to the court not only that he didn't know this, but that counsel didn't inform him of that consequence, and also that he wouldn't have pled guilty had he known about that consequence. But, Dr. Durkee, it seems that you're implying, though, that there's no need to inquire with counsel. The court has no obligation, no duty, no need to inquire of counsel. To the contrary, Your Honor. I argued in a different issue of my brief that, at a minimum, what my client did was express that counsel was ineffective and that court did have a duty to inquire. But what I'm saying is that even if the court doesn't inquire, I think under the particular facts of this case, that it's sufficient to establish that trial counsel didn't provide that advice. How are we supposed to make that determination? That would seem to imply that judges don't have to inquire beyond necessarily what the offender has done and just not even ask or inquire into it. How do you make that determination? You're supposed to have a record, right? Right. And, again, it's our position that, you know, in the context of this case, in the context of what happened at the guilty plea, that the record does establish it. My client did specifically say that his attorney didn't advise him of this information. But even if Your Honors think that it needs to go back, again, the state concedes that it needs to go back for it. We understand that part. But it's the question you're discussing that we need to inquire about. What case are you, do you find the strongest support for your position that the court, that we should be just doing it on the circumstances of the testimony and the fact that the lawyer did not respond, stood silent? So, I mean, the authority that our position for the objective and reasonable assistance turns out is just a huge idea. It's that we think that the standards in the record shows that this is a sufficiently severe consequence that counsel had a duty to advise my client about. And we think that my client's assertions on the record repeatedly through a long colloquy with the court in the context of, you know, what happened at the guilty plea hearing establishes that counsel did not give that advice. But if Your Honors think that it does need to go back so that there can be a crack free or for some or for further motion, proceedings on a motion to withdraw, I do think it is, this court still needs to decide whether or not counsel did have that duty to provide that advice. And I think this court would still need to decide whether or not he would face the residential burglary charge as far as to the extent to whether it would be rational for him to want to go to trial rather than to plead guilty. So, to answer to my original question, though, it seems that there is no case on point. I don't think there's no case on point, but again, there's also no case that I've seen. No, but we would be deciding something that, at least in the case law to date, hasn't been hinted at or in any way alluded to. I think there's no case with this particular factual scenario, Your Honor, but I do concede that there's no case that I've found that says that, you know, in an attorney's silence that you can perceive. But also, again, I think, you know, under the context of this case, I do think it's sufficient. But if this court does, again, if this court does decide that it needs to go back for a critical inquiry, I do think it still needs to decide the questions of whether or not counsel did have this duty and whether or not he would, if my client, would have faced the residential burglary charge had he gone to trial. I think the answer to that latter question is no, because a person can't be convicted of residential burglary. Just to remind the court, there was a residential burglary charge that was dismissed as part of this plea, but he couldn't have been found guilty of that charge because a person can't be found guilty of residential burglary for entering their own home. There are two key elements here of residential burglary. It's the entry without authority and also that this entry be into the dwelling place of another. And just plain language of Illinois statutory law is that other means other than the offender. And so even if an order of protection prevents a person from, deprives a person of authority to enter a home, it doesn't make their home the dwelling place of another. And that's exactly what the Illinois Supreme Court held in People v. Reed in 1997. They found that the exact same language in the home invasion statute meant that even when there's an order of protection, the home invasion offense doesn't apply because it doesn't render it the dwelling place of another. And more importantly, after Reed, the legislature amended the home invasion statute to expressly say that it does apply when there's an order of protection. So they changed the language to specifically say that, quote, dwelling place of another includes a dwelling place where the defendant maintains a tenancy interest, but from which the defendant has been barred by an order of protection. But they didn't make that modification to the residential burglary statute, which shows that that modification doesn't apply to the residential burglary statute. So based on that, Your Honors, I think that even if this court thinks that further factual development is required, I do think as a matter of law, just on the issue of whether it'd be rational for my client to want to go to trial rather than to plead guilty to decide that this residential burglary offense, he could be convicted of this residential burglary offense. And therefore, he could only at most be convicted of violating order of protection, which at most would provide just, even if convicted, even if unsuccessful at trial, he would face just a couple more months in prison. And therefore, considering his extreme distaste and obvious expressed on the record distaste for home arrest, it'd be rational under these circumstances for him to risk those extra months in prison rather than take a guaranteed four years of electronic monitoring. So again, it's our position that the record is more than sufficient to establish that counsel did not provide my client with this advice. But if this court finds that it is insufficient, it needs to go back for a crankle inquiry, or we'd argue that it actually needs to go back for a crankle hearing. I think even no matter what counsel says below, I think, based on what my client is saying, that there's at least possible neglect of the case here that would require the appointment of new counsel to litigate this ineffectiveness claim below. So therefore, Your Honors, we respectfully ask that you find that counsel is ineffective in this case and that my client should be allowed to withdraw his plea. Or alternatively, as the state concedes, this case should at least go back for a crankle inquiry. Again, we'd say it should go back for a crankle hearing and for 604B compliance. So unless Your Honors have any other questions, I'll save the rest of my time for rebuttal. It sounds like to me, Mr. Gerke, at some point that you were also asking us to make a finding, though, that counsel was required to advise him the mandatory release concerning the home confinement. Is that what you were asking us? I think, yeah. I mean, that is the issue, right? I mean, I think if we go back for a new hearing, I mean, the question here is whether the attorney has a duty. You know, counsel can only be ineffective if they violate some duty, right? And so if counsel, the question is whether counsel has a duty to advise his client. I'm sorry, Mr. Gerke. It's the finding that you're asking us to make here, though, in addition to sending it back, correct? Yeah, I think you could make that finding as well. I think perhaps even though I think my client made a full record of the importance of that factor to him below, I think it's also possible that he could further develop that record if Your Honors want to send it back. Because I think that the question of whether that finding needs to be made, it's both a factual question and it's sort of a legal question. Right. Let me just ask real quick, Mr. Gerke, and then I want you to finish. So you don't believe that that finding is already embedded in the law? Is that why you're asking us to make that finding? I think the finding is embedded in the law under the test of Padilla and Hughes. I think the test of Padilla and Hughes says that when a consequence is sufficiently certain, severe, and enmeshed in the criminal process, counsel has a duty to provide it. And so in this case, this is a mandatory consequence that is, you know, four years of 24-hour surveillance with the possibility of being incarcerated for the entire four-year MSR term. So I think counsel would have that duty to make that. Okay. So I believe, Ben, your fear is you don't believe the trial judge will understand that it's already embedded in the law. Is that why you're asking us to make that finding? I think that, well, I think that if Your Honors, for example, were to disagree with me, then there'd be no point to sending it back. So I think that, you know, I think it would be important. It's a legal question. As I said, I think the facts here do show that my client at least he has said on the record that he didn't know he was serving this consequence. Counsel never told him about it, and he would never have pled guilty. And so the question is, in that context, did counsel have a duty to advise him of that consequence? And so if it gets kicked back, and I will point the court already, you know, that he said all that stuff to the court, and the court expressly said, you can take it up on appeal. So, you know, Your Honors are saying, Your Honors are saying whether or not, you know, the record is fully developed, the court heard all these arguments. I've heard my client say all these things, heard my client say, my attorney never told me this, and the court said, well, I'll let you just take that up on appeal. So the court apparently didn't think it needed to know any more information to decide this claim. So, and the court believed that just telling him that he had to serve MSR was sort of equivalent of telling him that that MSR term actually, the entire term had to be served on house arrest. So, you know, that's sort of another reason why I think the record is sufficiently developed is the court did say, just take it up on appeal. But even if it's not, again, I think Your Honors could still decide, you know, I think at a minimum, it needs to decide whether or not he would face that residential burglary charge below. And then I think you could also decide, you know, that if the facts show that counsel didn't say, you know, counsel didn't provide that advice, then that would, you know, violate the duty. Does that answer your question, Justice Thank you. All right. Well, like I said, I'll respectfully ask you to find the counsel was ineffective and allow my client to withdraw his plea and I'll save the rest of my time for rebuttal. Thank you. Ms. Slattery. May it please the court. Defendant's ineffective assistance of counsel claim predicated on plea counsel's purported failure to advise him that his four-year MSR term includes electronic monitoring fails where he is unable to establish either Strickland fraud. With respect to the prejudice prompt or the performance prompt, as this court has already Excuse me. Can we just ask if counsel could tell us what what has been conceded? Because I think there's some conflict in the briefs about what has been conceded. So if we don't stop there, just kind of let us know where so we know where we are and where we need to go with this. If you've already conceded an issue. Sure. So the people have conceded that there's no certificate. So it has to go back for that. We've also conceded that there was no sort of recognition from the trial court that defendant was raising an ineffective assistance of counsel claim or that it specifically involves counsel's purported failure to tell him that the four years MSR included electronic monitoring. So contrary to what opposing counsel just said, the record was not sufficiently developed with respect to this claim. If you look through it, the court kept telling defendant read this, read this. And it was the fact that he was advised four years of MSR. So it wasn't there was never any specific discussion of the link between the MSR and the monitoring, which is what the defendant is disputing now. And importantly, there's no evidence in the record, understandably so, that defendant ever conveyed his particular aversion to EM to his attorney prior to pleading guilty. And absent such a conversation, it would not be for defendant. Defendant was on EM even prior to pleading guilty. And there was never any sort of vocalization on his part until after he pled that he had any specific issue with electronic monitoring. Well, we really don't know too much. I mean, we know what he said, the defendant said, but going to what you just indicated, it seemed from reading the transcript, that the judge and the defendant were not communicating. They were talking about different things and weren't really addressing the same issue. It just never connected. No, they were definitely talking past each other. Exactly. That's the way I read it. So you agree with that? Right, right. Now, with respect to electronic monitoring being a sufficiently severe collateral consequence, we're going to more of the merit-based argument. Four years of EM is simply not analogous to deportation or lifetime civil commitments, which were the types of collateral consequences discussed in Padilla and Hughes. The import of those cases essentially instructs that it's not whether a liberty interest is involved, but whether the impact, the collateral consequences impact on that liberty interest is sufficiently severe. So counsel, your argument would be then that counsel had no obligation to inform him of the four years of EM after he was released. Is that correct? Yeah, we would argue that it does not fall within the disclosure obligations required by Strickland. That's why counsel is asking us to make the finding, because there's obviously some conflict out there. Okay, thank you. And now Padilla and Hughes have been extended, but it's been in a very limited sort of way. So in People v. Dodds, it was extended to include lifetime sex offender registration. More recently... Ms. Slattery, where would you draw the line? Because I don't know, if I was taking a plea, I'd kind of want to know if I have to wear a anklet around for four years. But it does affect the liberty interest. So where would you draw the line? I mean, I think we need to understand the real world. I can't imagine any of us want to be dragging that thing around for that long without having been informed of it. Right. In an ideal world, a defendant is going to be aware of every potential collateral consequence before he pleads guilty. But there's a difference between what's ideal and what is actually required by law. And so far, in terms of drawing the line, it's basically been limited to sort of lifetime consequences that have impacts for a lifetime. So, for example, in Dodds, it was extended to lifetime sex offender registration. Most recently in People v. Shaw, they extended it to requiring that a defendant be advised of the violation at the door policy, which would result in him potentially spending his entire lifetime MSR term in prison. So I think that's a really big jump when you're talking about those types of lifetime consequences. Do you have any case that has addressed the EM situation? Yeah, there's no specific case that has found that. So, I mean, the fact that it hasn't been decided one way or the other, you know, just because certain cases are decided doesn't mean every case that's different should be rejected. I mean, the fact is EM has become a major aspect of incarceration and monetary bail. We have EM, I mean, the world has changed even since Bedelia, you know, in 2010. So it seems that this is an important question that, as Justice Taylor alluded to, someone would want to know, just because, you know, you say you got four years, that doesn't tell you anything about you might have an electronic monitor on your ankle. Right. So the defendant was advised, and the term mandatory supervised release was actually mentioned, I believe, twice during the plea process. So defendant was aware that there would be some sort of supervision involved. That could be checking in with your, you know, away from the legalese, and we want to speak to people in ways that they understand. So, you know, MSR, right, the acronym, we know what that means. You know, lawyers know what that means. But does your average person on the street know what that means? And maybe, you know, some do. But I guess my point is this. It's hardly any burden on the justice system to say that you're going to have to wear an electronic monitor around your ankle for four years. I mean, that's it, you know. So when we decide this case and decide whether to, if we decide whether to extend it, you know, we take into consideration the burden. And if the burden is so minimal, then why not? Well, I think reading Padilla and Hughes, it wasn't, they weren't so much concerned with the burden of the disclosure obligations. I think, again, I think everyone would agree that it would be great if the defendant is advised of every potential collateral consequence. But their focus was really on the severity of the collateral consequence. In a finite four-year period of electronic monitoring is simply not analogous to deportation or, you know, lifetime civil commitment. I think there's a big difference there. Now, with respect to the prejudice prong, he's unable to show that the decision to reject the plea agreement at issue would have been rational under the circumstances. So he was charged with three counts of violating order protection, which carried a sentencing range of one to three years. And then we also have the residential burglary, which would have subjected him to a potential sentence of four to 15. Do you agree with counsel that he probably would not have been tried on the residential burglary claim? No, we disagree. So defendant is relying on People v. Reed, which was interpreting the home invasion statute. Now, the home invasion statute and residential burglary do contain analogous language. But this court has already held in People v. Williams that was not overruled by Reed, that a person can commit residential burglary if he enters a residence he is precluded from entering by virtue of an order of protection, which is exactly the circumstance here. So by pleading guilty, defendant avoided being subjected to a potentially significantly longer prison term if he had gone to trial and been convicted of residential burglary. And then even if residential burglary was taken off the table, the only way he's going to avoid electronic monitoring would have been if he was acquitted of everything at trial. So there's little doubt based on the record that he would have been convicted of violating order protection, given the fact that police arrested him at the residence. Let me just ask you the case you're referring to, is that the case though, where the trial court had given exclusive possession to one party and then the other party entered their home in the middle of the night, coming through a window? Is that the case you're referring to when you say that? Because that was that was more than just an order for protection. That was a case where a trial judge had actually given exclusive possession to the property to the wife. Yeah, I think he gave it the property by virtue of like a plenary order of protection. I think that's how the court characterized it. Okay. All right. We'll verify. Okay. So if he had gone to trial and been convicted of violating order of protection, he could have actually received more prison time than he did. So he could have potentially served more than three days in jail. And then he would have also necessarily been subjected to four years MSR involving electronic monitoring. So in light of these factors, defendant is simply unable to show that it would have been rational for him to reject the plea agreement. And that counsel's representation during the plea process was his court to reject defendants in effect. This is the council play. Okay. Thank you very much. Rebuttal. Yes, your honors. So just to address the first thing that Justice Walker brought up about what's been conceded here in our reply brief, we did say that the only disputed issue is this issue. Just to make a slight clarification of that, we did argue in our Frankel issue that we think the case should go back for new hearing, not just a crankle inquiry. The state concedes the inquiry, but not the hearing. So just to draw that distinction. In addition, your honors, opposing counsel addresses trial counsel's advice and says that there's no evidence that the defendant conveyed his aversion of EM to counsel, but counsel is the one that had a duty to ask his client about that. People versus Hughes shows that if you look to ABA standards, which can be sort of a proxy for counsel for attorney's objective or reasonable assistance, the ABA says that counsel has a duty to interview their client about the collateral consequences that may be important to them in light of the circumstances of the offense that they face. In fact, it says counsel should routinely be aware of statutory collateral consequences of certain offenses. And I'll point out that in Padilla, which was a deportation case, the court emphasized, we're talking about sort of the burden, the court emphasized that in that case, counsel could have quote, easily determined those deportation consequences just by looking at the statute. And that's exactly what we have here. So it was incumbent upon counsel to determine this. It's not a question of whether my client, although that can also be a fact, it's not a question of whether my client, that's the whole issue here is whether counsel should have and did ask my client whether this was important to him. And even apart from that, he had a duty to advise him about that because it does meet the Padilla and Hughes test. Opposing counsel talks about how this isn't, you know, deportation or civil commitment, but there's no, none of those cases limit this test to cases that involve that kind of lifetime penalty. The question is just whether it's a direct automatic consequence that's insufficiently severe. And I want to emphasize that not only is four years in electronic monitoring, 24 hours of surveillance for four years, it's also any violation of that under the statute, under the MSR statute would mean that my client could have been incarcerated for the entire four year MSR term, which is actually a year longer than he could have been incarcerated for violating order of protection. So in the context of this case, it is certainly a severe, you know, that as far as with respect to the rational under the circumstances analysis, counsel sort of glosses past the fact that the legislature amended the home invasion statute after Reed. So, and after Williams, the case that relies on. So when the legislature amends the home invasion statute to say that we have to change the meaning of dwelling place of another to include situations where a person's prevented from going into their home because of the order of protection, but doesn't make that same amendment to the residential burglary statute, which counsel concedes is the exact same language that shows those have different meanings. So, and so Williams rationale, well, it wasn't expressly overruled, Williams's rationale was overruled by essentially the legislature under principles of statutory construction and its rationale was specifically overruled. I'm sorry, not expressly, but was at length. There's a whole paragraph of analysis there. And, and it, and Williams's whole rationale, just, it was a little bit thin of an analysis, but it says that basically because the domestic violence act allows orders of protection to prevent someone from entering in their own home. Therefore the residential, it applies to residential burglary. And the Reed court expressly addressed that and said that the domestic violence act did not change the meaning of the words dwelling place of another. And as I said, again, after, and even after that, irrespective of Reed, the legislature amended the statute, which shows that the legislature understands that these, that the meaning dwelling place of another has a different meaning now in the home invasion statute with that extra order of protection language than it does in the residential burglary statute. So based on that, we, again, we'd ask your honors to find that the residential burglary statute, my client couldn't have been convicted of that offense because he entered his own home. And finally, on just sort of the more substantive issue of, you know, whether we've counsel mentions that he could have served, my client could have served more prison time if he lost it, you know, if he lost it at trial. I mean, if that was the standard, no, no person would ever have a rational basis to withdraw their guilty plea because that's always a possibility. You rarely are people pleading guilty to the maximum sentence they can get. So what, what the only Supreme court has held is that the standard is, and this is also from the U S Supreme court, is that if a collateral consequence from the defendant's perspective would be similarly dire to losing a trial, then it is rational for them to want to go to trial, roll the dice at trial rather than plead guilty. And that's quote, even if there's the smallest chance of success at trial. So the question isn't whether he'd serve, you know, some more present time. The question isn't whether, you know, he had a great defense for trial. The question is under his circumstances, would it have been rational for him to want to go to trial? And the answer to that is yes. He faced the guarantee of four years of home arrest, which he hates versus the same plus maybe a couple more months in prison, but also with some possibility of acquittal. And under those circumstances, it would have been rational for him want to want to roll the dice rather than know and fit and guarantee himself that four years of house arrest. Therefore, I respectfully ask that you find either the trial counsel was ineffective and that my client's guilty plea should be withdrawn for being unknowingly involuntary or remand for a crimeful hearing and for 604D compliance. Thank you. Thank you very much to both of you for your arguments and your briefs. We'll take the case under advisement and we'll decide in a future time. So thank you very much. Have a good afternoon to both of you. Thank you. Thank you.